**EPSTEIN DRANGEL LLP**
Ashly E. Sands, *pro hac vice*
asands@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: 212-292-5390
Facsimile: 212-292-5391

Peter J. Farnese (SBN 251204)
pfarnese@ipcounselors.com
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone:  310-356-4668
Facsimile:   310-388-1232

Attorneys for Plaintiff,
AirDoctor, LLC

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRDOCTOR, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>XIAMEN QICHUANG TRADE CO., LTD.,<br><br>Defendant. | CASE NO. 2:22-cv-05784-GW(ASx)<br><br>Judge: Hon. George H. Wu<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**<br><br>Date:        September 7, 2023<br>Time:       8:30 am<br>Crtm:       9D |

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION .................................................................................. 1

II.     STATEMENT OF FACTS AND PROCEDURE ........................................ 2

    A.      Factual Background ................................................................ 2

       1. Plaintiff and its AirDoctor Products................................. 2

       2. Defendant and Its False Advertising of Substandard Filters
       as "HEPA"-Grade and "Compatible" With AirDoctor Air
       Purifiers ......................................................................... 4

    B.      Harm to Plaintiff and Its Customers...................................... 4

    C.      Damages ................................................................................. 5

    D.      Procedural History ................................................................. 5

III.    LEGAL STANDARD ........................................................................... 6

IV.     ARGUMENT ...................................................................................... 6

    A.      Plaintiff Has Satisfied the Procedural Requirements for Default
       Judgment Under Rule 55 and Local Rule 55-1 ..................... 6

    B.      The *Eitel* Factors Favor Entry of Default Judgment ........... 7

       1. Plaintiff Will Suffer Prejudice Absent Entry of Default
       Judgment ........................................................................ 7

       2. The Merits of Plaintiff's Claims and Sufficiency of the Complaint
       Weigh in Favor of Default Judgment............................... 8

         a. Lanham Act Claim ................................................... 8

         (1) False Statement.................................................... 8

         (2) Deception and Materiality .................................... 9

i                                                  CASE NO. 2:22-cv-05784 -GW(ASx)

MEMORANDUM OF POINTS AND AUTHORITIES

(3) Interstate Commerce .......................................................... 10

(4) Injury ................................................................................ 10

b. UCL and FAL Claims ................................................. 11

3. The Sum of Money at Stake Is Proportional to the Harm ............. 12

4. There Is No Possibility of Dispute Regarding Material Facts ...... 12

5. There Is No Possibility of Excusable Neglect ............................. 12

6. The Policy for Decisions on the Merits Does Not Preclude Default Judgment ............................................................. 13

C. Plaintiff is Entitled to the Requested Relief ...................................... 13

1. Permanent Injunction ................................................................. 13

2. Damages ..................................................................................... 16

3. Attorneys' Fees and Costs .......................................................... 17

V. CONCLUSION ......................................................................... 18

1

2

# **TABLE OF AUTHORITIES**

**Page(s)**

3

## **CASES**

4

5

6

*AECOM Energy & Constr., Inc v. Ripley*,
   348 F. Supp. 3d 1038 (C.D. Cal. 2018)........................................................ 10

7

8

*Align Technology Inc. v. Strauss Diamond Instruments Inc*.,
   2019 WL 1586776 (N.D. Cal. 2019).................................................. 11, 15

9

10

*Alpargatas USA, Inc. v. Flopstore LLC*,
   2022 U.S. Dist. LEXIS 110724 (C.D. Cal. Mar. 25, 2022) ................... 13, 14

11

12

*Belks Media v. OnlineNIC*,
   2010 U.S. Dist. LEXIS 143946 (N.D. Cal. Aug. 23, 2010). ........................ 15

13

14

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) ...................................................................... 11

15

16

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
   398 F. Supp. 3d 623 (N.D. Cal. 2019)................................................. 8, 9, 10

17

18

*Comm. on Children's Television, Inc. v. General Foods Corp.*,
   35 Cal.3d 197 (1983).................................................................................. 11

19

20

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*,
   4 Cal. App. 4th 963 (1992).................................................................... 13, 14

21

22

*Design Collection, Inc. v. Going Out, Inc*.,
   2016 WL 9185322 (C.D. Cal. Sept. 14, 2016) .............................................. 7

23

24

*Dyson, Inc. v. Bissell Home Care, Inc.*,
   951 F.Supp.2d 1009 (N.D. Ill. 2013)........................................................ 1, 9

25

26

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ................................................................................... 14

27

28

*Deckers Outdoor Corp. v. Ozwear Connection Pty, Ltd*.,
   2014 U.S. Dist. LEXIS 132169 (C.D. Cal. Sept. 18, 2014) ......................... 16

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986) .......................................................... 6, 12, 13

*Electra Entm't Grp. Inc. v. Crawford*,
   226 F.R.D. 388 (C.D. Cal. 2005) ................................................... 7

*Factory Direct Wholesale, LLC v. Itouchless Housewares & Prods.*,
   411 F. Supp. 3d 905 (N.D. Cal. 2019) ........................................... 9

*Figs, Inc. v. My Open Heart LLC*,
   2023 U.S. Dist. LEXIS 86853 (C.D. Cal. Mar. 7, 2023) ............. 15

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
   2019 WL 4570033 (C.D. Cal. Aug. 26, 2019) .............................. 16

*Harper House, Inc. v. Thomas Nelson, Inc.*,
   889 F.2d 197 (9th Cir. 1989) ..................................................... 9, 10

*In-N-Out Burgers v. Smashburger IP Holder LLC*,
   2019 U.S. Dist. LEXIS 62743 (C.D. Cal. Feb. 6, 2019) .............. 8

*Kasky v. Nike, Inc.*
   27 Cal.4th 939 (2002) .................................................................. 11

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
   114 F. Supp. 3d 852 (N.D. Cal. 2015) .......................................... 11

*Linotype Co. v. Varityper, Inc.*,
   1989 U.S. Dist. LEXIS 9105 (S.D.N.Y. Aug. 4, 1989) ............... 16

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) ....................................... 15

*Monster Energy Co. v. Vital Pharm., Inc.*,
   2023 U.S. Dist. LEXIS 64630 (C.D. Cal. Apr. 12, 2023) ........... 15

*Nat'l Grange of the Ord. of Patrons of Husbandry v. California Guild*,
   334 F. Supp. 3d 1057, 1067 (E.D. Cal. 2018) .............................. 16

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*,
   290 F.3d 578 (3d Cir. 2002) ........................................................ 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Nutrition Distribution LLC v. Ironmag Labs, LLC*,
    2018 U.S. Dist. LEXIS 223872 (C.D. Cal. Nov. 16, 2018) ......................... 16

*Paisa, Inc. v. N & G Auto*,
    928 F. Supp. 1009 (C.D. Cal. 1996)................................................................ 16

*PepsiCo, Inc. v. California Sec. Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002)......................................... 6, 8, 12, 13

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,
    219 F.R.D. 494 (C.D. Cal. 2003) ...................................................................... 7

*POM Wonderful LLC v. Purely Juice, Inc.*,
    2008 U.S. Dist. LEXIS 55426 (C.D. Cal. July 17, 2008) ..................... 10, 15

*Quincy Bioscience, LLC v. Ctr. Field Retail, LLC*,
    2023 U.S. Dist. LEXIS 10119 (C.D. Cal. Jan. 18, 2023)............................. 17

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997)............................................................................ 8

*Sream, Inc. v. Trukis25, Inc.*,
    2016 U.S. Dist. LEXIS 199299 (C.D. Cal. Mar. 3, 2016) ........................... 17

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
    839 F.3d 1179 (9th Cir. 2016)........................................................................ 17

*Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*,
    519 F. Supp. 3d 839 (D. Or. 2021)................................................................. 14

*Tender Software Pty v. ForestCoin, Inc.*,
    2021 U.S. Dist. LEXIS 246727 (C.D. Cal. Sep. 15, 2021) ......................... 17

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011)........................................................................... 14

*Warner Bros. Entm't Inc. v. Caridi*,
    346 F. Supp. 2d 1068 (C.D. Cal. 2004)...................................................... 6, 8

## **STATUTES**

**FEDERAL**
15 U.S.C. § 1116(a) ........................................................................ 13, 14

15 U.S.C. § 1117(a) ........................................................................... 16

15 U.S.C. §1125(b) ............................................................................. 8

**STATE**
Cal. Bus. & Prof. Code § 17200 .......................................................... 11

Cal. Bus. & Prof. Code § 17500 .......................................................... 11


## FEDERAL RULES

FED. R. CIV. P.
    8          .............................................................................. 6
    55         .............................................................................. 1, 6, 7


## LOCAL RULES

LOCAL RULE
    55-1     ............................................................................. 1, 6, 7

    58-1     ............................................................................. 2

Pursuant to Federal Rule of Civil Procedure 55 and Local Rule 55-1, Plaintiff AirDoctor, LLC ("Plaintiff" or "AirDoctor") respectfully requests that the court enter default judgment against Defendant Xiamen Qichuang Trade Co., Ltd. ("Defendant") for failure to plead or otherwise defend against this action in a timely manner.

## I. INTRODUCTION

Plaintiff initiated this action to stop the harm to Plaintiff's business and its customers caused by Defendant's false and misleading advertising of cheap, flimsy imitation replacement air filters for Plaintiff's popular Plaintiff's AirDoctor Air Purifiers[1] under Defendant's "FCFMY brand ("Substandard Filters"). Plaintiff's genuine Plaintiff's AirDoctor Air Purifiers with their genuine AirDoctor UltraHEPA Filters have earned the trust of consumers, health-conscious individuals, allergy sufferers, and others with medical or respiratory conditions, to provide powerful and effective air filtration for their homes and businesses.

In effort to profit off of Plaintiff's AirDoctor Brand, AirDoctor Mark, ULTRAHEPA Mark, AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters Defendant has flooded the marketplace with its Substandard Filters with demonstrably false advertising claims that they can "replace"; are "compatible with"; and/or "fit" Plaintiff's AirDoctor Air Purifiers; and/or meet the HEPA standard to provide equivalent performance to Plaintiff's AirDoctor UltraHEPA Filters -- but they are neither "compatible with", nor properly "fit" in Plaintiff's AirDoctor Air Purifiers; nor do they meet the HEPA standard. Courts have recognized that such false "HEPA" claims violate the Lanham Act and false advertising laws. *See, e.g., Dyson, Inc. v. Bissell Home Care, Inc.*, 951 F.Supp.2d 1009 (N.D. Ill. 2013) (vacuum cleaner company's statements that its vacuums met "HEPA" standards were literally false under Lanham Act and state law). As described in Plaintiff's well-pleaded Complaint, third-party laboratory testing confirms the falsity of Defendant's advertising and that Defendant has tricked thousands of

---

[1]  Unless otherwise noted, the capitalized terms herein have the same meaning as those in the Complaint. *See* Dkt. 1.

1  Plaintiff's customers into purchasing Substandard Filters using the false claims that the
2  filters are "HEPA", "compatible" with AirDoctor Air Purifiers, and provide the same
3  performance as genuine AirDoctor UltraHEPA Filters.

4      Despite multiple attempts to contact Defendant to address these issues and serving
5  the Complaint and summons in accordance with the Court's orders, Defendant has failed
6  to appear or otherwise respond to the Complaint. As set forth herein, Plaintiff meets the
7  procedural and substantive requirements for the Court to enter default judgment and
8  award the requested relief. Plaintiff respectfully requests: 1) the entry of final judgment[2];
9  2) a permanent injunction; and 3) damages in the amount of $2,492,149.00 in lost profits;
10  and 4) attorneys' fees and costs in the amount of $53,442.98.

11  **II.    STATEMENT OF FACTS AND PROCEDURE**

12      **A.    Factual Background**

13          **1. Plaintiff and its AirDoctor Products**

14      Plaintiff AirDoctor is a purpose-driven consumer goods company based in
15  Sherman Oaks, California. *See* Complaint ("Compl.") at ¶¶23-26. The company's mission
16  is to create affordable and accessible products, relying on science and independent third-
17  party testing. *See id.* One of Plaintiff's most popular and trusted brands is its
18  professional-grade AirDoctor Air Purifiers, which utilize its UltraHEPA Filters. *Id.* at
19  ¶¶25-26

20      Plaintiff has invested millions of dollars in research, development, and promotion
21  the AirDoctor air purifiers and genuine replacement filters. *Id*. at ¶26. The AirDoctor Air
22  Purifiers are mechanical air purifiers that incorporate a 3-Stage filtration system that
23  combines a cleanable pre-filter with AirDoctor's UltraHEPA filter and proprietary dual-
24  action Carbon/Gas Trap/VOC filter. *Id*. at ¶27.

25

26

27  [2]  In accordance with L.R. 58-1, Plaintiff lodges a proposed form of judgment
28  concurrently with this application.

The centerpiece of the AirDoctor filtration system is Plaintiff's UltraHEPA filter and its sealed filter system. *Id*. at ¶¶27, 31.   The gold-standard of mechanical air filters are so-called "HEPA" filters. As defined by the U.S. Dept. of Energy ("DOE"), high-efficiency particulate air ("HEPA") filters work by forcing air through a fine mesh to trap harmful airborne particles.  *Id*. at ¶¶28-29.

In order to claim that an air filter is "HEPA", the DOE standard specifies that the filter must "remove at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns." *Id*. at ¶29.[3] Plaintiff's AirDoctor UltraHEPA Filters capture dust, pollen, pet dander, smoke, mold spores, volatile organic compounds, and household odors with an efficiency <u>exceeding</u> the DOE standard.  *Id*. at ¶30; *see also* Compl at Ex. E-F.

Independent laboratory testing of the AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters confirms that they not only meet the HEPA standard, but also remove at least 99.99% of particles as small as 0.003 microns (or 100 times smaller than the HEPA standard). *Id*. The performance of AirDoctor Air Purifiers and the UltraHEPA Filters are backed by rigorous, third-party laboratory testing. AirDoctor is one of the few companies in the industry to test and publish its products' effectiveness in removing bacteria and viruses, including SARS-CoV-2, and H1N1.  *Id*. at ¶32.

Unlike many of its competitors, Plaintiff publishes the results of that testing on its AirDoctor Website,  https://airdoctorpro.com/ ("AirDoctor Website").  Plaintiff's commitment to testing and transparency is one of the major reasons that consumers choose AirDoctor Air Purifiers and UltraHEPA replacement filters and trust Plaintiff's products with their health. *Id*. at ¶33.  In addition to its own website, Plaintiff sells AirDoctor Air Purifiers and genuine UltraHEPA replacement filters on third-party websites, including <u>Amazon.com</u>. *Id*. at ¶35; and Compl. at Ex G.

---

[3]  *See also* https://www.epa.gov/indoor-air-quality-iaq/what-hepa-filter#:~:text=It%20is%20an%20acronym%20for,of%200.3%20microns%20(%C2%B5m).

### 2. Defendant and Its False Advertising of Substandard Filters as "HEPA"-Grade and "Compatible" With AirDoctor Air Purifiers

Defendant is a Chinese entity that directly competes with Plaintiff in selling Substandard Filters claiming to be replacements for Plaintiff's AD3000 AirDoctor Air Purifier, including on Amazon.com. Compl. at ¶¶16, 37-47. Defendant operates the storefront, "Replacement Filter" where it sells the substandard, imitation replacement filters under the "FCFMY" brand on Amazon.com. Compl. at ¶¶42-43. On Amazon.com, Defendant advertises that its Substandard Filters are "HEPA" grade, are "compatible" with Plaintiff's AirDoctor Air Purifiers, "remove 99.97% of airborne particles down to 0.3 microns in size" and "fit snugly" in the AirDoctor Air Purifier. Compl. at ¶¶44-47, Exs. H-I.

In its advertising, Defendant conveys the message to consumers that its Substandard Filters meet the HEPA standard to trap 99.97% of airborne particles with a size of 0.3 microns. *Id.* at ¶¶48-49. Moreover, by claiming its Substandard Filters are "compatible" and "fit" AirDoctor units, Defendant indicates that its Substandard Filters perform just as Plaintiff's AirDoctor UltraHEPA Filters do within the AirDoctor Air Purifiers, and that they properly fit in the AirDoctor Air Purifiers to maintain a sealed system. *Id.* at 49. However, testing of Defendant's Substandard Filters confirms that they use inferior materials, do not meet the HEPA standard, and the design of the filters does not create a proper airtight seal in the unit (and therefore the filters are neither "compatible" nor "fit" as claimed by Defendant). *Id.* at ¶50; Exhibit J. In addition, Defendant also includes the false "HEPA" claims and compatibility claims on the product packaging. *See* Declaration of Mohan Ahaus ("Ahaus Decl.") at Ex. A.

### B. Harm to Plaintiff and Its Customers

Defendant's conduct and fraudulent advertising of as well as its sale of Substandard Filters has caused (and continues to cause) substantial and irreparable harm to AirDoctor, and its AirDoctor Brand. Compl. at ¶¶51-52; *see also* Ahaus Decl. at ¶9. Defendant is duping AirDoctor customers into purchasing Substandard Filters that it claims are

"HEPA", are "compatible", and are equivalent in performance to genuine AirDoctor UltraHEPA Filters, when they are not. *Id.* at ¶10; Compl. at ¶51.

Not only do Defendant's falsely advertised Substandard Filters decrease the performance of the AirDoctor Air Purifiers and cause damage to Plaintiff's customers' AirDoctor Air Purifiers, but Defendant's conduct poses potentially serious health risks for people with certain medical issues, including those with respiratory and allergy conditions, who rely on the high filtration standards and validated third party testing of the AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters. *Id.* at 11; Compl. at ¶14.

**C.    Damages**

As detailed in the Declaration of Mohan Ahaus, from December 2021 through June 2023, based on sales reports complied by Helium-10, Defendant has sold 43,863 units of the falsely advertised filters on Amazon.com for $2,787,089.00 in revenue to Defendant. Ahaus Decl. ¶¶ 12-16.  These falsely advertised filters have resulted in lost profits of $2,492,149.00 to Plaintiff. *Id.* at ¶ 17.

**D.    Procedural History**

Plaintiff filed the Complaint on August 15, 2022.  Dkt. 1.  On April 18, 2023, the Court granted Plaintiff's application for an order authorizing alternative service of process.  Dkt. 27.  In accordance with the Court's order, Plaintiff (1) attempted to serve Defendant via direct message through Defendant's Amazon account on April 21, 2023, however, upon information and belief, Amazon deleted the message and Plaintiff was unable to determine whether the message containing the pleadings was delivered; (2) successfully sent a message through Defendant's Amazon account on April 24, 2023 again notifying Defendant of this action and providing Defendant with Plaintiff's counsel's contact information, but Plaintiff was unable to attach documents to the Amazon message; (3) served the Summons and Complaint and all case opening documents on Defendant's counsel of record listed on its Trademark Registration on April 26, 2023; and (4) on April 28, 2023, sent the Summons and Complaint out for service on

1  the Director of the USPTO, which was successfully delivered on May 1, 2023. Dkt. 32.

2  Because Defendant failed to appear or otherwise file a responsive pleading to the

3  Complaint, Plaintiff requested entry of default on June 21, 2023. Dkt. 35.  The Clerk

4  entered Defendant's default on June 22, 2023.  Dkt. 36.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant default judgment after the Clerk of the Court enters default under Rule 55(a). Fed. R. Civ. P. 55(b).  "Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages." *PepsiCo, Inc. v. California Sec. Cans,* 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002); Fed. R. Civ. Proc. 8(b)(6).

Granting default judgment is within the Court's discretion. *Warner Bros. Entm't Inc. v. Caridi* ("*Caridi*"), 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004); *PepsiCo*, 238 F. Supp. 2d at 1174. The Ninth Circuit has directed courts to consider several factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## IV.    ARGUMENT

### A.    <u>Plaintiff Has Satisfied the Procedural Requirements for Default Judgment Under Rule 55 and Local Rule 55-1</u>

In addition the requirements of Rule 55(b), Local Rule 55-1 requires the party seeking default judgment to file a declaration establishing: (1) when and against what party default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other

similar fiduciary who has appeared; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice. L.R. 55-1.

First, Plaintiff served the summons and complaint on Defendant, but Defendant has not responded to the Complaint or otherwise appeared or participated in this action. *See* Dkt. 32, 35. The Clerk granted entry of default as to the Complaint. *See* Dkt. 36. Second, Plaintiff has filed a declaration as to the remaining elements of Local Rule 55-1. *See* Farnese Decl. at ¶¶3-8. Defendant is not a minor, infant, or otherwise incompetent person. *Id*. at ¶3. Further, the Servicemembers Civil Relief Act does not apply. *Id*. Finally, under Federal Rule of Civil Procedure 55(b)(2), because Defendant has not appeared in these proceedings, notice of default judgment proceedings is not required. *See generally* Docket; Farnese Decl. ¶¶6-7. Accordingly, Plaintiff has satisfied Local Rule 55-1. *See also Philip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D. 494, 498 (C.D. Cal. 2003).

## B.    The *Eitel* Factors Favor Entry of Default Judgment

The *Eitel* factors weigh decisively in favor of entering default judgment. Without a judgement and injunction, Plaintiff is unable to halt Defendant's false advertising of its Substandard Filters.

### 1.  Plaintiff Will Suffer Prejudice Absent Entry of Default Judgment

The first *Eitel* factor "considers whether plaintiff will suffer prejudice if default judgment is not entered." *Design Collection, Inc. v. Going Out, Inc*., No. CV 16-04297-FMO-(AGRx), 2016 WL 9185322, at *2 (C.D. Cal. Sept. 14, 2016). Here, if default judgment were not entered, Plaintiff "would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery." *Electra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). Because Defendant has failed to appear, Plaintiff would be prejudiced if it were unable to recover from Defendant and halt Defendant's false advertising. This factor therefore favors a default judgment.

## 2. The Merits of Plaintiff's Claims and Sufficiency of the Complaint Weigh in Favor of Default Judgment

The second and third *Eitel* factors require that Plaintiffs "state a claim on which [they] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175; *see Caridi*, 346 F. Supp. at 1072 (default where merit to the plaintiff's claim and copyright infringement sufficiently pled). Plaintiff sufficiently states a claim for false advertising under the Lanham Act and California law, as well as unlawful and unfair competition under California law.

### a. *Lanham Act Claim*

In the Ninth Circuit, to prevail on a false advertising claim under § 43(a)(1) of the Lanham Act, a plaintiff must prove the following five elements: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997).

### (1) *False Statement*

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Id*. Further, "[w]hen evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Id*. "[A] literally false message need not be explicit." *In-N-Out Burgers v. Smashburger IP Holder LLC*, 2019 U.S. Dist. LEXIS 62743, 2019 WL 1431904, at *4 (C.D. Cal. Feb. 6, 2019). It may be "literally false by necessary implication where 'the audience would recognize the claim as readily as if it had been explicitly stated.'" *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d

623, 635 (N.D. Cal. 2019); *see also Novartis Consumer Health, Inc*., (finding that the term "nighttime" in a product named "Night Time Strength" "necessarily conveys a message that the [ ] product is specially made to work at night").

Here, Defendant claims that its Substandard Filters provide "HEPA" level filtration. "HEPA" is an acronym for "high efficiency particulate air [filters]". To be considered "HEPA" the U.S. Dept. of Energy ("DOE") requires that the filters must "remove <u>at least</u> 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a size of 0.3 microns." (emphasis added). Compl. 37-52. When evaluating HEPA advertising claims, courts apply the standard set by the DOE. *See Dyson, Inc. v. Bissell Homecare, Inc.,* 951 F. Supp. 2d 1009, 1030 (N.D. Ill. 2013) (Applying DOE standard and holding "based on the undisputed record, the proper definition for 'HEPA' in the context of this case is a filter or filtration system that has a minimum efficiency of 99.97% for 0.3 micron particles when tested at the application's rated air flow.").

Here, Defendant specifically advertises that its Substandard Filters meet the HEPA standard. Compl. 44-49. However, third-party laboratory testing confirms that Defendant's advertising claims are literally false as they do not meet the minimum performance requirements when used inside an AirDoctor Air Purifier. Compl. At 50, Ex. J. Likewise, that testing also shows that Defendant's claims that its Substandard Filters are "compatible" with Plaintiff's AirDoctor Air Purifier and therefore provide equivalent performance to Plaintiff's AirDoctor UltraHEPA Filters are also literally false. *Id.*

### (2)*Deception and Materiality*

A literally false statement establishes deception. *Factory Direct Wholesale, LLC v. Itouchless Housewares & Prods*., 411 F. Supp. 3d 905, 924 (N.D. Cal. 2019). Deception is material if "it is likely to influence the purchasing decision." *Southland Sod Farms*, 108 F.3d at 1139 (9th Cir. 1997). Where an advertisement is demonstrated to be literally false, both actual deception and materiality are presumed. *Southland Sod Farms*, 108 F.3d at 1148; *Harper House, Inc. v. Thomas Nelson, Inc*., 889 F.2d 197, 209 (9th Cir. 1989) (applying presumption of deception from literally false advertising in non-comparative

advertising case); *AECOM Energy & Constr., Inc v. Ripley*, 348 F. Supp. 3d 1038, 1056 (C.D. Cal. 2018); *POM Wonderful LLC v. Purely Juice, Inc.,* 2008 U.S. Dist. LEXIS 55426, 2008 WL 4222045, at *1 (C.D. Cal. July 17, 2008), *aff'd,* 362 F. App'x 577 (9th Cir. 2009); ("A plaintiff is entitled to relief under the Lanham Act on proof of literal falsity alone, as the court will assume that false statements actually mislead consumers.")[4].

Here, Plaintiff's well-pleaded Complaint and independent, third-party testing of Defendant's Substandard Filters demonstrate that Defendant's advertising claims are literally false.  Therefore, Plaintiff establishes deception and materiality.

## (3) *Interstate Commerce*

Under the fourth element of its Lanham Act claim, Plaintiff must show that Defendant "caused its false statement to enter interstate commerce." *Southland Sod Farms*, 108 F.3d at 1139.  Here, it cannot be not disputed that Defendant has marketed and sold its Substandard Filters to U.S. consumers on Amazon.com and has placed the product in the stream of commerce in the United States. Compl. at ¶16, 43-48.

## (4) *Injury*

The fifth element of a Lanham Act false advertising claim requires a plaintiff to prove that it "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.  Here, in order to ensure that the AirDoctor Air Purifiers function as designed and maintain a sealed system, Plaintiff recommends that its customers replace the filters in their AirDoctor Air Purifiers approximately once a year or every 6 months, depending on usage or other indoor conditions. Compl. at 34.

---

[4]  Materiality may also be proven "by showing that the defendants misrepresented an inherent quality or characteristic of the product." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 644 (N.D. Cal. 2019) (internal citations omitted); *see also POM Wonderful LLC v. Purely Juice, Inc*., 2008 WL 422045, at *11 (C.D. Cal. July 17, 2008) (finding false advertising material when it "pertained to the very nature of its juice product").

Defendant's Substandard Filters have harmed Plaintiff's reputation because their false claims have misled customers of Plaintiff's AirDoctor Air Purifiers and Plaintiff's AirDoctor UltraHEPA Filters to believe that Defendant's Substandard Filters provide equivalent performance to Plaintiff's AirDoctor UltraHEPA Filters. As a result of Defendant's false advertising, Plaintiff's customers purchased 43,863 of Defendant's Substandard Filters instead of Plaintiff's AirDoctor UltraHEPA Filters, which placed the health of those customers at risk. Ahaus Decl. ¶12.  *See Southland Sod Farms*, 108 F.3d at 1139; *see also Align Technology Inc. v. Strauss Diamond Instruments Inc.*, 2019 WL 1586776 at *13 (N.D. Cal. 2019) (noting likelihood of diversion of sales and lessening of goodwill from untrue claim that competitor product produces scans faster).

### b. *UCL and FAL Claims*

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. California's FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. "'[A]ny violation of the false advertising law . . . necessarily violates' the UCL." *Kasky v. Nike, Inc*. 27 Cal.4th 939, 950 (2002) (quoting *Comm. on Children's Television, Inc. v. General Foods Corp*., 35 Cal.3d 197, 210 (1983)).

Courts apply the same analysis to Lanham Act, Unfair Competition Law, and False Advertising Law claims where, as here, they are based on the same alleged conduct. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (violations of UCL are "substantially congruent" to claims under the Lanham Act); *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 860 (N.D. Cal. 2015) (claims brought under Cal. Bus. & Prof. Code § 17500 are substantially congruent to false advertising claims brought under the Lanham Act).  Accordingly, as set forth above, because Defendant's conduct violates the Lanham Act, it also violates the UCL and FAL.

In sum, the second and third *Eitel* factors weigh in favor of granting default judgment because the allegations in the Complaint, taken as true, establish Defendant's false advertising violation of the Lanham Act and related California laws.

### 3.  The Sum of Money at Stake Is Proportional to the Harm

This factor considers the "the amount of money at stake in relation to the seriousness of Defendants conduct." *PepsiCo, Inc*., 238 F. Supp. 2d at 1176. Here, Defendant has sold 43,863 of Defendant's Substandard Filters to Plaintiff's customers from December 2021 to June 2023, for revenue of over $2.7 million.  Ahaus Dec. ¶16. Plaintiff seeks damages of $2,492,149.00 in the form of its lost profits. In sum, the amount at issue is proportionate to the seriousness of Defendant's conduct and this factor favors entry of default judgment.

### 4.  There Is No Possibility of Dispute Regarding Material Facts

A defendant's failure to respond to a complaint indicates that "the likelihood that any genuine issue may exist is, at best, remote." *Philip Morris USA, Inc. v. Castworld Prods.*, *Inc*., 219 F.R.D. 494, 500 (C.D. Cal. 2003). As default has been entered against Defendant and Plaintiff's Complaint is well-pleaded, there is no possible dispute concerning the material facts because the factual allegations of Plaintiffs' complaint are taken as true. *PepsiCo*, 238 F. Supp. 2d at 1177; Dkt. 1. This *Eitel* factor also weighs in favor of default judgment.

### 5.  There Is No Possibility of Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *PepsiCo, Inc*., 238 F. Supp. 2d at 1177. It is unlikely that the default in this case resulted from Defendant's excusable neglect. Plaintiff served Defendant with the Complaint, the summons, and other case initiating documents through multiple avenues approved by the court in its order authorizing alternative service of process.  Dkt. 27. In addition, Plaintiff has communicated directly with Defendant through Amazon.com and its listed counsel for its registered trademarks. Defendant failed to file an answer or

1    any other responsive pleadings and failed to make an appearance. Defendant has had
2    abundant notice of this case but has apparently elected not to participate. The sixth *Eitel*
3    factor therefore weighs in favor of granting default judgment.

4    **6. The Policy for Decisions on the Merits Does Not Preclude Default**
5         **Judgment**

6         The final *Eitel* factor considers the preference for deciding cases on the merits, *see*
7    *Eitel*, 782 F.2d at 1471-72, but "this factor, standing alone, cannot suffice to prevent entry
8    of default judgment for otherwise default judgment could never be entered," Caridi, 346
9    F. Supp. 2d at 1073. Defendant's default is the reason there can be no decision on the
10   merits. *PepsiCo, Inc*., 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs'
11   Complaint makes a decision on the merits impractical, if not impossible"). This factor
12   therefore favors entry of default judgment.

13   **C.    Plaintiff is Entitled to the Requested Relief**

14        Plaintiff requests the following relief: 1) the entry of final judgment for Plaintiff
15   and against Defendant; 2) a permanent injunction; 3) lost profits damages in the amount
16   of $2,492,149.00; and 4) attorneys' fees and costs in the amount of $53,442.98.

17   **1.    Permanent Injunction**

18        Under the Lanham Act, a district court has the "power to grant injunctions,
19   according to the principles of equity and upon such terms as the court may deem
20   reasonable," "to prevent a violation" under 15 U.S.C. § 1125(a) ("Section 1125(a)"). 15
21   U.S.C. § 1116(a) ("Section 1116(a)"). *Alpargatas USA, Inc. v. Flopstore LLC*, No. CV
22   21-6063-GW-PVCx, 2022 U.S. Dist. LEXIS 110724, at *15 (C.D. Cal. Mar. 25, 2022).
23   Further, the UCL and FAL also allow prevailing plaintiffs to obtain injunctive relief. Cal.
24   Bus. & Prof. Code § 17203 ("Any person who engages, has engaged, or proposes to
25   engage in unfair competition may be enjoined in any court of competent jurisdiction.").
26   "The remedial power granted under [the UCL and FAL] is extraordinarily broad" and
27   includes the power to grant injunctions with general deterrent effect. *Consumers Union*
28   *of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 972-73 (1992).

"Courts routinely grant permanent injunctions prohibiting deceptive advertising." *TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820, 829 (9th Cir. 2011). Moreover, courts can also order the false advertiser to take steps to correct their deception. *See id.* ("[T]he district court here didn't abuse that discretion when it concluded that [ordering the false advertiser to affirmatively present] the splash screen [on its own website] was the optimal means of correcting defendants' false advertising" but remanding for further analysis on First Amendment considerations); *see also Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy,* 4 Cal. App. 4th 963, 972-973 (1992) (California appellate court upheld a mandatory injunction against a dairy company under UCL and FAL).

A plaintiff seeking a permanent injunction must demonstrate that (1) "it has suffered an irreparable injury;" (2) "remedies at law, such as monetary damages, are inadequate to compensate for that injury;" (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted;" and (4) "the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange*, *L.L.C.*, 547 U.S. 388, 391 (2006).  As this Court has recognized: "[w]hen an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief, such relief is proper absent compelling circumstances counseling against its imposition."  *Alpargatas USA, Inc.,* 2022 U.S. Dist. LEXIS 110724, at *15.

First, Plaintiff will suffer irreparable harm if Defendant continues to falsely advertise its Substandard Filters. Under the Lanham Act, as revised by the Trademark Modernization Act of 2020 ("TMA"), a plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order." 15 U.S.C. § 1116(a) (added by Congress as part of the Consolidated Appropriations Act; see Pub. L. 116-260, § 226, 134 Stat. 2208 (2020)); *Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC,* 519 F. Supp. 3d 839 (D. Or. 2021)(applying TMA presumption in false

1  advertising case).  As described above, Plaintiff has demonstrated a violation of the

2  Lanham Act and is entitled to the presumption. *See Monster Energy Co. v. Vital Pharm.,*

3  *Inc.*, No. EDCV 18-1882 JGB (SHKx), 2023 U.S. Dist. LEXIS 64630, at *6 (C.D. Cal.

4  Apr. 12, 2023).

5      Even without the presumption provided by the TMA, Plaintiff can establish

6  irreparable harm due to the diversion of customers Plaintiff's AirDoctor UltraHEPA

7  Filters to Defendant's Substandard Filters and harm to Plaintiff's goodwill and business

8  reputation. *See, e.g., Monster Energy Co. v. Vital Pharm., Inc.*, 2023 U.S. Dist. LEXIS

9  64630, at *7 ("[T]he Court concludes that Monster's loss of customers is an irreparable

10  harm."); *Align Technology*, 2019 WL 1586776 at *13 (noting likelihood of diversion of

11  sales and lessening of goodwill from untrue claim that competitor product produces scans

12  faster); *see also* Ahaus Decl. at ¶¶9-11 (describing harm to Plaintiff and its goodwill).

13      <u>Second</u>, monetary remedies are inadequate to address the harm to Plaintiff.

14  Defendant's refusal to participate in this case supports finding that monetary damages

15  may be inadequate to prevent future harm. *See, e.g., Belks Media v. OnlineNIC*, 2010 U.S.

16  Dist. LEXIS 143946, 2010 WL 7786122, at *4 (N.D. Cal. Aug. 23, 2010).  Further, a

17  legal remedy in the form of monetary damages may also be inadequate if Defendants are

18  unable to satisfy any judgment and Plaintiff is forced to return to this Court to seek relief.

19  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220

20  (C.D. Cal. 2007) ("[a] legal remedy is inadequate if it would require a multiplicity of

21  suits") (internal quotations omitted). Defendant's failure to appear indicates that this

22  scenario is a distinct possibility. Relief beyond monetary damages—*i.e.*, an injunction—

23  is thereby warranted. *Figs, Inc. v. My Open Heart LLC*, No. 2:22-cv-06129-AB-MAR,

24  2023 U.S. Dist. LEXIS 86853, at *12 (C.D. Cal. Mar. 7, 2023).

25      <u>Third</u>, the balance of hardships favors Plaintiff because "there is no harm to a

26  defendant from an injunction which prevents continuing dissemination of false

27  statements." *POM Wonderful LLC v. Purely Juice, In*c., 2008 U.S. Dist. LEXIS 55426,

28  2008 WL 4222045, at *16 (C.D. Cal. July 17, 2008), *aff'd*, 362 F. App'x 577 (9th Cir.

2009); *see Linotype Co. v. Varityper, Inc*., 1989 U.S. Dist. LEXIS 9105, 1989 WL 94338, at *3 (S.D.N.Y. Aug. 4, 1989) (granting injunction despite defendant's assurance that false ad had "run its course").  In other words, "[t]here is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with law." *Deckers Outdoor Corp. v. Ozwear Connection Pty, Ltd*., 2014 U.S. Dist. LEXIS 132169, 2014 WL 4679001, at *13 (C.D. Cal. Sept. 18, 2014).

Fourth, there is a public interest supports a permanent injunction. Courts have repeatedly found that "[t]here is a strong public interest in preventing false advertising of products in the marketplace." *Monster Energy Co.*, 2023 U.S. Dist. LEXIS 64630, at *23 (internal citation omitted).  Thus, "the public . . . will benefit from an injunction protecting consumers and competitors from Defendants' false advertising." *Nutrition Distrib. LLC*, 2018 U.S. Dist. LEXIS 223872, 2018 WL 6264986, at *4; *see also Paisa, Inc. v. N & G Auto, Inc*., 928 F. Supp. 1009, 1013 (C.D. Cal. 1996) ("strong public interest in preventing consumer confusion and fraud").  As described above, the permanent injunction will prevent Defendant's false claims about its Substandard Filters.  Accordingly, the public interest favors an injunction.

For the reasons set forth above, Plaintiff requests that the Court issue the proposed injunction under the Lanham Act, UCL, and FAL.  *See, e.g., Nat'l Grange of the Ord. of Patrons of Husbandry v. California Guild*, 334 F. Supp. 3d 1057, 1067 n.4, 1071–72 (E.D. Cal. 2018) (granting an injunction under the FAL and the Lanham Act); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc*., 2019 WL 4570033, at *3 (C.D. Cal. Aug. 26, 2019), *rev'd in part, vacated in part on other grounds*, 28 F.4th 35 (9th Cir. 2022) (ordering and shaping an injunction against false advertising under the Lanham Act and the UCL).

## 2.    Damages

The Lanham Act provides that prevailing plaintiffs are entitled to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).  While Plaintiff bears the burden to prove damages, "courts

have accepted less precise estimates of damages where a defendant frustrates the discovery of a precise amount by defaulting in the action." *Tender Software Pty v. ForestCoin, Inc*., No. 2:21-cv-02169-JVS-MRWx, 2021 U.S. Dist. LEXIS 246727, at *15 (C.D. Cal. Sep. 15, 2021).

Here, because Plaintiff has been unable to obtain discovery from Defendant due to default, Plaintiff requests damages in the form of lost profits on sales of its own AirDoctor UltraHEPA Filters. Based on sales reports compiled by Helium-10, an industry standard platform that tracks sales data for particular items on Amazon.com, from December 2021 through June 2023, Defendant has sold 43,863 units of the Substandard Filters on Amazon.com for $2,787,089.00 in revenue to Defendant.   Ahaus Decl., ¶¶ 12, 16. Because Defendant competes directly with Plaintiff on Amazon.com, the falsely advertised filters have resulted in lost profits of $2,492,149.00 to Plaintiff.  *Id.*

### 3.    Attorneys' Fees and Costs

An award of "attorney[s'] fees to the prevailing party" is authorized "in exceptional cases" under the Lanham Act. 15 U.S.C. § 1117(a). An "exceptional case" is "one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated*." SunEarth, Inc. v. Sun Earth Solar Power Co*., 839 F.3d 1179, 1180 (9th Cir. 2016) (citation omitted). Where, as here, the defendant fails to participate in the litigation despite being served, a case is exceptional and attorneys' fees are warranted. *Quincy Bioscience, LLC v. Ctr. Field Retail, LLC*, No. SACV 22-01327-CJC (DFMx, 2023 U.S. Dist. LEXIS 10119, at *21 (C.D. Cal. Jan. 18, 2023); *Sream, Inc. v. Trukis25, Inc*., No. EDCV 15-02277-VAP (SPx), 2016 U.S. Dist. LEXIS 199299, at *16 (C.D. Cal. Mar. 3, 2016) ("[Defendant] did not defend this action, and the allegations in the Complaint, admitted on [Defendant's] default, reflect that his misconduct was willful.").

Consistent with Local Rule 55-3, Plaintiff requests an award of $53,442.98 in attorneys' fees ($5,600 plus 2% of the amount of the judgment over $100,000).

1    **V.    CONCLUSION**

2          For the foregoing reasons, Plaintiff respectfully requests that the Court enter default

3    judgment against Defendant as set forth in the currently filed proposed judgment and

4    permanent injunction.

5

6

7    DATED: August 7, 2023                    EPSTEIN DRANGEL LLP

8                                             By:    _s/ Peter J. Farnese_
                                                     Peter J. Farnese
9                                                    pfarnese@ipcounselors.com
                                                     Ashly E. Sands, *pro hac vice*
10                                                   asands@ipcounselors.com
                                                     60 East 42nd Street, Suite 1250
11                                                   New York, NY 10165
                                                     Telephone: 212-292-5390
12                                                   Facsimile: 212-292-5391

13                                                   Attorneys for Plaintiff
14                                                   AirDoctor, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28