UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-5784-GW-ASx | Date | September 5, 2023 |
|---|---|---|---|
| Title | *AirDoctor, LLC v. Xiamen Qichuang Trade Co., Ltd.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None Present | | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT [40]

Attached hereto is the Court's Tentative Ruling on Plaintiff's Motion [40] set for hearing on September 7, 2023 at 8:30 a.m.

:

Initials of Preparer   JG

*AirDoctor, LLC v. Xiamen Qichuang Trade Co., Ltd.*, Case No. 2:22-cv-05784-GW-(ASx)
Tentative Ruling on Motion for Default Judgment

Plaintiff AirDoctor, LLC ("Plaintiff") filed suit on August 15, 2022, against Xiamen Qichuang Trade Co., Ltd. ("Defendant"), advancing three claims for relief: 1) violation of the Lanham Act, pursuant to 15 U.S.C. § 1125(a), 2) violation of California's unfair competition law, pursuant to California Business & Professions Code § 17200, et seq., and 3) violation of California's false advertising law, pursuant to California Business & Professions Code § 17200, et seq.

I. **Underlying Allegations**

Defendant sells – chiefly on Amazon.com – purported "replacement" air filters for – and that it asserts are "compatible with" and "fit" – Plaintiff's AirDoctor 3000 mechanical air purifiers. *See* Complaint ¶¶ 1, 9, 37, 42-49. Plaintiff's own "UltraHEPA" air purifiers are made especially for its AirDoctor Air Purifiers, and are designed to meet or exceed the U.S. Department of Energy's HEPA[1] standard. *See id.* ¶¶ 3, 27-29. Defendant also asserts that its filters meet the HEPA standard. *See id.* ¶ 9. In other words, Defendant claims that its filters provide the same filtration performance and efficiency as Plaintiff's AirDoctor UltraHEPA Filters. *See id.* ¶ 10.

None of the foregoing assertions Defendant makes are true. *See id.* ¶ 9. Unlike with respect to Plaintiff's own filters, third-party laboratory testing has confirmed that Defendant's filters, as used within the AirDoctor Air Purifiers, are made with ineffective materials that do *not* meet the minimum HEPA filtration standards, do not properly fit and seal within the AirDoctor Air Purifiers, and can cause inefficient air flow that may damage consumers' AirDoctor Air Purifiers. *See id.* ¶¶ 11, 30-32, 39, 50. Defendant is thus tricking Plaintiff's customers into purchasing Defendant's filters, capitalizing and profiting off of Plaintiff's and its brands' goodwill and success. *See id.* ¶¶ 13, 37, 51.

In order to ensure that the AirDoctor Air Purifiers function as designed and maintain a sealed system, Plaintiff recommends that its customers replace the filters in their AirDoctor Air Purifiers approximately once a year or every 6 months, depending on

---

[1] "HEPA" stands for "high efficiency particulate air [filter]," which is defined to remove at least 99.7% of dust, pollen, mold, bacteria and any airborne particles with a size of 0.3 microns. Complaint ¶ 2.

1

usage or other indoor conditions. *See id.* ¶ 34. Plaintiff sells genuine replacement AirDoctor UltraHEPA Filters on its website and via third-party sites like Amazon.com. *See id.* ¶ 35. Directly-competing with Plaintiff, Defendant's conduct has diverted sales of Plaintiff's genuine AirDoctor UltraHEPA Filters and has harmed Plaintiff's goodwill and reputation. *See id.* ¶¶ 41, 46, 51.

Plaintiff owns all registered and unregistered intellectual property rights in and to its AirDoctor Brand and AirDoctor Air Purifiers and AirDoctor UltraHEPA Filters, including both registered and unregistered copyrights and trademarks. *See id.* ¶ 6.

## II. **Procedural Background**

Plaintiff served Defendant with the Summons and Complaint for this action via alternative methods of service approved by the Court. *See* Certificate of Service of Summons and Complaint/Declaration of Peter J. Farnese, Docket No. 32, ¶¶ 6, 9-10; *see also* Docket Nos. 26-27. Defendant did not respond to the Complaint. Consequently, Plaintiff requested, and the Court Clerk entered, Defendant's default on June 22, 2023. *See* Docket No. 36.

Plaintiff now seeks a default judgment, including $2,787,089.00 in lost-profits damages,[2] attorneys' fees in the amount of $53,442.98 in accordance with Local Rule 55-3, and permanent injunctive relief. *See* Docket No. 40-5, at 3:8-6:5.

## III. **Local Rule 55-1**

Under Local Rule 55-1, a party requesting default judgment must make a showing as to the following: (1) when and against what party the default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that Defendant is not in military service such that the Servicemembers Civil Relief Act does not apply; and (5) that notice has been served on the defaulting party, if required by Fed. R. Civ. P. 55(b)(2). *See* C.D. Cal. L.R. 55-1; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). Plaintiff's counsel has provided the necessary information. *See*

---

[2] Plaintiff actually reports having suffered lost profits in the amount of $2,492,149.00. *See* Declaration of Mohan Ahaus, Docket No. 40-3, ¶ 16; Docket No. 40-1, at 2:9, 17:11-12. The higher figure reflected in its "[Proposed] Judgement" [*sic*], *see* Docket No. 40-5, ¶ 18, is the amount of *revenue* Plaintiff asserts Defendant took in over the same time period. The Court presumes that the inclusion of the higher figure in Plaintiff's proposed judgment was simply an innocent error.

2

Declaration of Peter J. Farnese, Docket No. 40-2, ¶¶ 3-4, 8. Because Defendant has not appeared in the action, no service of this motion was necessary under Fed. R. Civ. P. 55(b)(2). Nevertheless, Plaintiff served the motion via the same channels the Court had previously approved for service of the case-initiating Summons and Complaint. *See* Docket No. 41.

Plaintiff has also fully complied with Local Rule 58-11, which requires that it submit a separate proposed default judgment in compliance with Fed. R. Civ. P. 58. *See* Docket No. 40-5.

### IV. The Merits of a Default Judgment

On entry of a default, well-pled allegations in the complaint regarding liability are generally deemed true. *See Geddes v. United Fin. Corp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (holding that "facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the [default] judgment"). Allegations as to damages, however, must be proven. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.1987). Where damages are liquidated (*i.e.*, ascertainable from definite figures contained in the documentary evidence or in detailed affidavits), default judgment may be entered without a damages hearing. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Allergan Inc. v. Mira Life Group Inc.*, 2004 U.S. Dist. LEXIS 26881, at *9 (C.D. Cal. June 9, 2004). The Court need not make detailed findings of fact in the event of default. *See Adriana Int'l Corp.. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

This Court has discretion to refuse to enter a default judgment in an appropriate case. *See Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The court may consider a variety of factors in the exercise of such discretion, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). For the reasons cogently-explained in Plaintiff's supporting brief, *see* Docket No. 40-1, at 7:18-26, 12:4-13:12, all of the *Eitel* factors but the last factor (which would appear to always work in a defaulting defendant's favor) are in Plaintiff's favor here (though, as discussed further *infra*, there may be reason to question the "sum of money at stake" in terms of the amount of damages Plaintiff seeks). That the final factor operates in Defendant's favor does not suffice to preclude entry of a default judgment against Defendant.

Although well-pled allegations are taken as true, "claims which are legally insufficient, are not established by default." *Cripps v. Life Insurance Co. of North America*, 980 F.2d 1261, 1267 (9th Cir. 1992). Whether a plaintiff has properly stated a claim is related to the second and third *Eitel* factors. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (referring to "the first two *Eitel* factors"). Particular analysis of that issue follows.

A. <u>Lanham Act False Advertising</u>

Plaintiff's showing on the second and third *Eitel* factors principally concerns its false advertising claim under the Lanham Act. Such a claim requires Plaintiff to allege and prove: 1) a false statement of fact by Defendant in a commercial advertisement about its own or another's product; 2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience, 3) the deception is material, in that it is likely to influence the purchasing decision, 4) Defendant caused its false statement to enter interstate commerce, and 5) Plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to Defendant or by lessening of the goodwill associated with its products. *See Wells Fargo & Co. v. ABD Ins. & Fin'l Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014).

As set forth above, Plaintiff alleged that Defendant (a company based in China, *see* Complaint, ¶ 16) advertised – in connection with its sales via Amazon.com – that its own air filters were compatible with, and thus would work within, Plaintiff's air-filtration systems, and that they met the HEPA standard, among other things. Plaintiff also explained the importance to the consuming public of filters meeting the HEPA standard (especially during and in the wake of the recent pandemic and increase in wildfires, *see id.* ¶ 20). Plaintiff also alleged that Defendant's false statements diverted sales from

Plaintiff and caused harm to Plaintiff's goodwill, because Defendant's air filters used in Plaintiff's air filtration system caused the system to not work as intended. Defendant has admitted these allegations by way of its failure to respond to the Complaint.

Clearly, given these assertions, Plaintiff sufficiently alleged all of the required elements of a Lanham Act false advertising claim. As Plaintiff further correctly explained in its brief, California unfair competition and false advertising claims are also established where a Lanham Act claim has been adequately-pled/proven. *See, e.g., Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994); *CoStar Grp., Inc. v. Commercial Real Estate Exch. Inc.*, 619 F.Supp.3d 983, 995 (C.D. Cal. 2022). Thus, the second and third *Eitel* factors are undeniably satisfied and, upon review and consideration of all of them, a default judgment is warranted covering all three claims in Plaintiff's Complaint.

## V. Remedies

### A. Damages

Unlike allegations regarding liability, Plaintiff is required to "prove up" its damages in the context of an application for a default judgment. In connection with this motion, Plaintiff seeks damages in the form of lost profits in excess of $2,000,000. There are two problems – beyond the issue noted in Footnote 2, *supra* – the Court perceives here.

First, "[a] default judgment must not differ in kind from, or *exceed in amount*, what is demanded in the pleadings." Fed. R. Civ. P. 54(c) (emphasis added). The Court has reviewed the Complaint and sees no sign of any particular dollar figure mentioned. Plaintiff will have to explain to the Court why the award of *any* dollar amount would not run afoul of Rule 54(c). It may be that, if Plaintiff truly wants a money judgment here (and any award of attorneys' fees that is calculated using the Court's Local Rule schedule), it may have to file and serve an amended complaint.

Second, even if there was not a probable Rule 54(c) problem, the Court has questions concerning how Plaintiff arrived at its lost profit figure using only Defendant's purported monthly revenue figures. *See* Declaration of Mohan Ahaus ("Ahaus Decl."), Docket No. 40-3, ¶¶ 16-17. Are Defendant's air filters used *only* in Plaintiff's air-filtration system, or were they advertised exclusively for such use? Are they the only two

5

actors in the particular market?[3] If the answers to either of these questions is "no," how would Plaintiff measure its damages on a one-for-one sale made/sale lost basis (assuming that is how they have calculated lost profits – there is no explanation provided thus far).[4]

B. Attorneys' Fees

In Section 1125(a) actions, attorneys' fees are permissible "in exceptional cases." Even assuming the Court would consider this case to be an exceptional case, however, Plaintiff has calculated its desired fee based upon the Court's Local Rule fee schedule, which pegs a fee to the amount of damages awarded. *See* C.D. L.R. 55-3. Because, as discussed *supra*, there is a question at this point whether or not *any* damages can be awarded in this case, no Local Rule fee calculation is possible at this point.

C. Injunctive Relief

The Lanham Act allows for injunctive relief. *See* 15 U.S.C. § 1116(a) (indicating that a court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a registered trademark owner's rights under – among other provisions – Section 1125(a)). Under *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), a plaintiff seeking a permanent injunction must satisfy a four-part test: 1) that it has suffered irreparable injury; 2) that there is no adequate remedy at law; 3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction. *See id.* at 391. Though *eBay* was a patent case, the same considerations apply in the context of trademark infringement such that no successful trademark infringement plaintiff is necessarily "entitled" to injunctive relief. *See La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) ("Following *eBay* and *Winter* [*v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)], we held that likely irreparable harm must be demonstrated to obtain a preliminary injunction in a copyright infringement case

---

[3] Plaintiff asserts in its supporting brief that consumers purchased Defendant's filters "instead of" Plaintiff's filters, but provides no citation to any allegation of fact that supports that contention. *See* Docket No. 40-1, at 11:4-6.

[4] It appears that Plaintiff has not attempted to value its lost goodwill/reputation for purposes of calculating a damages figure (again, presuming no Rule 54(c) problem).

and that actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action.") (citing *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011) and *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137-38 (9th Cir. 2006)); *see also* 15 U.S.C. § 1116 (providing for "rebuttable presumption of irreparable harm" to plaintiff upon a finding of a violation in the case of a motion for a permanent injunction).

Here, the Court concludes Plaintiff has demonstrated a sufficient basis for an irreparable harm finding, at the very least in connection with damage to its reputation and goodwill due to the alleged deficient performance of Defendant's filters when used within Plaintiff's air-filtration systems. *See* Ahaus Decl., ¶¶ 7, 9-11. Such harm is frequently considered to be virtually impossible to measure and compensate in money damages, meaning that an adequate remedy at law is frequently unavailable. The balance of hardships and public interest favor preventing a company from making false claims that could injure Plaintiff's reputation and goodwill and lead to harm to public health. Plaintiff therefore satisfies the *eBay* test for a permanent injunction.

However, establishing a basis for injunctive relief does not give one the right to include any terms it wants in a provision for such relief. There are aspects of the requested injunctive relief that trouble the Court. First, this is not a trademark *infringement* or counterfeiting case. As a result, certain of the language included in the requested injunctive relief is arguably inappropriate (even ignoring potential vagueness problems with some of the terminology used) and should be removed. *See* Docket No. 40-5, at 3:28-4:3, 4:24-5:2, 5:8-14; 5:15-17 (requiring revision of "subparts 2(a) – (f)" in line with above comments), 5:22 ("This is not a genuine product."), 6:5 (revise "Paragraph 21" to read "Paragraph 21(a)," re-numbered from 21(b)), 7:19-21 (beginning with "or use of 'AirDoctor . . ." continuing through ", AD3000)"). Equally problematic, Plaintiff has only established that *Defendant* makes false claims about *its* filters, not that any other actor in the marketplace has a similar problem. Thus, certain language attempting to loop in other competitor's filters that might make similar claims is not proper here. *See id.*, at 4:6-7 ("and/or replacement filter for any AirDoctor Air Purifier"). If the Court were to issue any default judgment in response to the instant motion, the injunctive relief provisions would have to be revised in accordance with the foregoing.

**VI.  Conclusion**

At this point in time, the Court would be prepared to issue a default judgment, but only encompassing injunctive relief (as adjusted *supra*). Plaintiff may either offer a supplemental brief in connection with this motion addressing the issues discussed herein or file an amended complaint addressing the seeming Rule 54(c) problem, and re-serve Defendant with that amended complaint in accordance with the Court's prior order allowing alternative forms of service.